# Wytheville.

## HURT'S ADM'X & ALS. v. PRILLAMAN & ALS.

### July 31, 1884.

1. EQUITABLE TITLE—*Judgments after Parol Sale.*—An equitable title held by a *bona fide* purchaser, though by a parol contract, who has paid the entire purchase .money and received possession, will be preferred in equity to the liens of judgment creditors subsequently acquired against the vendor, *provided* the parol contract relied on is certain and definite in its terms, and is sustained by satisfactory proof. *Floyd, Trustee,* v. *Harding & als.,* 28 Gratt. 401.

2. IDEM—*Case at Bar* one where the parol contract relied on is too uncertain and indefinite, and too unsupported by proof to bring it within the protection of the rule laid down in *Floyd, Trustee,* v. *Harding & als., supra.*

Appeal from decree of circuit court of Franklin county, pronounced in vacation on 20th October, 1883, in the chancery cause of John Prillaman against Cary Gray and als. The object of the suit was to subject a tract of four hundred acres of land, situate in said county on the head waters of Pigg river, whereof Ira M. Hurt died seized, to satisfy the alleged lien of a decree obtained by said Prillaman against said Cary Gray in April, 1867, in the circuit court of Floyd county, for the sum of $1,314.06, and duly docketed in the clerk's office of Franklin county on 8th October, 1867. In 1859, at a sale made under a decree of the county court last named, said Cary Gray purchased said land, and William R. Gray was his surety. About four months after the docketing of said decree of Prillaman, the sale

commissioner, by deed dated 29th February, 1868, and expressing on its face to be for $3,700, the payment whereof by said Cary Gray was thereby acknowledged, conveyed said land to said Cary Gray, who, by deed of same date, conveyed it to his son, Harvey Gray, for $2,000, who, his wife uniting, by deed dated 25th August, 1871, conveyed it for $4,000 to said William R. Gray, called Riley Gray; and by deed of 10th November, 1871, the latter and his wife conveyed it to Ira M. Hurt for $3,000, to-wit: $2,000 in land and $1,000 in money. Each deed acknowledged the payment of the purchase money. The bill set up these facts, and insisted on the satisfaction of the lien of the decree for $1,314.06 out of the land. In his answer Ira M. Hurt set up as a defence that William R. Gray paid the entire purchase money as surety of Cary Gray at the judicial sale, that there was a verbal agreement between Cary and W. R. Gray in 1866, that the latter should take the land to indemnify himself; that more than a year before Prillaman's decree, W. R. Gray, by parol, sold the land to Harvey Gray and placed him in possession; that no deed was made by the sale commissioner until 1868, and that it was then made to Cary because he had been reported to the court as the purchaser; that Cary conveyed it to Harvey same day according to the parol agreement, but that Harvey failing to pay for the land, W. R. Gray had to take it back, and that afterwards in 1871, the latter conveyed it to Ira M. Hurt. The defence being in brief, a parol contract between Cary and W. R. Gray and a resulting trust in favor of the latter who is claimed to have paid the entire purchase money, and that this trust takes preference of the lien of Prillaman's decree for said $1,314.06.

But the evidence was uncertain and contradictory as to the material facts. The cause coming on to be heard the court decreed the sale of the land to satisfy the said decree; and therefrom the administratrix of Ira M. Hurt, who had died pending the suit, obtained an appeal and *supersedeas* from one of the judges of this court. Opinion states the case fully.

*George E. Dennis,* for the appellants.

*Whittle & Anderson, A. A. Phlegar,* for the appellees.

RICHARDSON, J., delivered the opinion of the court:

In March, 1877, John Prillaman filed his bill in the circuit court of Franklin county against Ira B. Hurt and others. The object of the suit was to subject a tract of 400 acres of land, on the head waters of Pigg river, in Franklin county, of which said Ira B. Hurt died seized, to the satisfaction of the alleged lien of a decree recovered by said Prillaman against one Cary Gray at the April term, 1867, of the circuit court of Floyd county, for the sum of $1,314.06, which judgment or decree was afterwards, to wit: on the 8th day of October, 1867, duly docketed in the clerk's office of the county court of Franklin county. The case is this: Sometime in the year 1859, in a suit in chancery then pending in the county court of Franklin, a decree was rendered directing the sale of a tract of land belonging to the estates of Peter Guerrant, deceased, and William Snuffer, deceased. The sale was made and the said Cary Gray became the purchaser thereof, and his son William R. Gray (known in the record as Riley Gray) became his surety for the purchase money.

On the 29th day of February, 1868, some four months after the docketing of plaintiff's judgment lien, for the consideration of $3,700, expressed on the face of the deed, I. M. Jones, the commissioner who made said sale, conveyed the tract of land in question to said purchaser, Cary Gray, the deed reciting the payment of said sum by said Cary Gray. On the same day, for the consideration expressed of $2,000, Cary Gray and Rebecca his wife, conveyed said tract of land to his son, Harvey Gray, the receipt of said purchase price being acknowledged on the face of the deed. On the 25th day of August, 1871, Harvey Gray and Nancy E., his wife, conveyed said tract of land to

Riley Gray, for the consideration expressed on said deed of $4,000, the receipt whereof is acknowledged. And on the 10th day of November, 1871, said Riley Gray and his wife conveyed the same land to Ira M. Hurt for the consideration of $3,000, the receipt of which is acknowledged, viz: two thousand dollars in land known as "the top of the mountain place," and one thousand dollars in hand. Such being the case made by the bill, the complainant insists that inasmuch as his judgment is prior in point of time to the conveyance from said commissioner to Cary Gray, and was then wholly unsatisfied, an execution having been issued and returned "no property," that the same attached as a lien on said land, and has so continued, and that the land in the hands of said Ira M. Hurt's heirs is liable thereto.

At the institution of this suit, Ira M. Hurt, in whose hands the land in question was sought to be subjected to the lien of the plaintiff's said decree, was living. He alone answered the bill. In his answer, he denies the lien as alleged, and to make good his defence, he says this land was sold before or during the late war under a decree of the county court of Franklin county, in a suit to which the personal representatives and heirs at law of Peter Guerrant, deceased, and William Snuffer, deceased, were parties, and purchased by the defendant, Cary Gray; that the defendant, William R. Gray, called in the plaintiff's bill Riley Gray, became the surety of the said Cary Gray, on the bonds for the purchase; that Cary Gray became insolvent, and never paid one cent of the purchase money, but that Wm. R. Gray paid every dollar of the purchase money, and it was *agreed* between Cary Gray and Wm. R. Gray, that Wm. R. Gray must take the land to indemnify himself for the purchase money paid by him; that this was done long before the recovery of the plaintiff's judgment, and that early in the year 1866, more than a year before the recovery of the plaintiff's judgment, the said Wm. R. Gray sold said land to the defendant, Harvey Gray, and placed him in possession thereof, and that he was in possession thereof, holding and using and claiming the same at

the time of the recovery of the plaintiff's decree, and continued so to hold, use and claim the same until some time in the year 1871. And the said defendant, Hurt, in his answer, further says: "It is true, that no deed was made to any of the parties until February, 1868, because the legal title was in the heirs at law of Peter Guerrant and William Snuffer, as aforesaid, and the first deed was made by Isaac M. Jones, commissioner, to Cary Gray, because Cary Gray had been reported as the purchaser of the land under the decree aforesaid, and the court directed *Jones* to make the deed to him, but that on the same day Cary Gray conveyed the land to Harvey Gray in accordance with the contracts which long before had been entered into between Cary Gray and Wm. R. Gray, and Wm. R. Gray and Harvey Gray; that Harvey Gray failed also to pay for the land and Wm. R. Gray had again to take it back, and by deed, dated the 25th August, 1871, Harvey Gray conveyed the land to Wm. R. Gray; and that afterwards Wm. R. Gray sold the land to said defendant, Hurt, and put him in possession thereof, and conveyed the same to him by deed dated 10th November, 1871; and that said Hurt has ever since held possession of same and claims it as his own, free from said lien." And the said defendant positively denies that Cary Gray owned or was entitled to any interest in said land at the rendition of the plaintiff's decree, insisted on as a lien, and insists that he has the prior, equitable right, and is protected by the doctrine laid down by this court in *Floyd, Trustee,* v. *Harding & als.,* 28 Gratt. 401.

None of the defendants, except Ira M. Hurt, having answered, and the cause having been matured at the October term, 1879, of said circuit court, an order was made submitting said cause to the judge of said court for decision in vacation; and on the 25th day of May, 1880, a decree was accordingly rendered subjecting said tract of land to the lien of said Prillaman's decree, and directing a sale thereof to satisfy the same.

In the meanwhile Ira M. Hurt had died, and an appeal from said decree was applied for by Lavinia J. Hurt, as administra-

trix of said Ira M. Hurt, and allowed by one of the judges of this court; but it subsequently appearing that neither the said administratrix, nor the heirs of Ira M. Hurt had been made parties to said suit, the appeal was dismissed, and the cause remanded for further proceedings.

In the lower court the cause was regularly revived against said administratrix and the heirs of said Ira M. Hurt, all of whom were infants. After the revival the plaintiff took additional testimony, and the infant defendants answered by their *guardian ad litem.*

On the 14th day of May, 1883, an order was again entered submitting the cause for decision in vacation, and accordingly, on the 20th day of October, 1883, a decree was entered by the judge of said court to enforce said lien upon the land in question by a sale thereof for that purpose, in default of the payment thereof as required by said decree ; and from that decree the case is here on appeal, and now to be determined.

Were the facts and circumstances *few and simple,* as in the case of *Floyd, Trustee,* v. *Harding, supra,* relied on by the appellants, then but little, if anything more could be necessary than a reference to that case as settling, one way or the other, this case. In that case, there was no controversy as to the facts. In this case, every material fact relied on by the appellants to sustain the parol contract attempted to be set up by them, is sharply contested in the testimony. Here the depositions of numerous witness, *pro* and *con,* were taken. In many respects their statements are unsatisfactory, or of doubtful import, and in others the witnesses are directly in conflict with each other. We have recourse only to this mass of testimony, much of which is either irrelevant or so remotely connected with the case as to furnish no reliable guide to the real facts of the case.

The question of law involved in this case is the same as that in *Withers* v. *Carter & als.,* 4 Gratt. 407, and *Floyd, Trustee,* v. *Harding & als.,* 28 Gratt. 401, to-wit: can a fair purchaser of the equitable estate hold it against creditors of the vendor, who

have not previously recovered judgments? That the equitable title thus held by a *bona fide* purchaser, though by parol contract, will be preferred in equity to the liens of judgment creditors subsequently acquired, when the parol contract relied on is certain and definite in its terms, and sustained by satisfactory proof, is too well settled in Virginia, especially by the cases above referred to, to admit of any question.

Delivering the opinion in *Floyd* v. *Harding, supra,* Staples, J., with great clearness and force, says: "In order to prevent the possibility of fraud in engrafting this exception upon the statute of frauds, it is settled that the parol agreement relied on must be certain and definite in its terms; the acts proved in part performance must refer to, result from, or be done in pursuance of the agreement, and the agreement must have been so far executed that a refusal of full execution will operate as a fraud upon the party, and place him in a situation which does not lie in compensation;" citing *Wright* v. *Pucket,* 22 Gratt. 370 ; and Leading Cases in Equity, 2d vol., 1052. And further on, the same learned judge says: "when these circumstances concur it is as much a matter of course for the equity courts to decree a specific execution, as for the common law courts to award damages for the breach of a written contract." It must, however, be borne in mind always that the above recited, requisite facts must concur, as the effect is, when they do so concur, to engraft upon the statute of frauds (a statute founded in wisdom and sanctioned by long experience) a most important exception.

In view of these principles let us inquire : (1), what were the facts in *Floyd, Trustee,* v. *Harding and als., supra ;* and (2), what are the facts in the case under consideration, in order to ascertain whether this case can be brought within the influence of that case as contended by the appellants. In that case, in the year 1856, James W. Leftwich sold to Lewis H. Turnbull a tract of land. The contract was not reduced to writing, but Turnbull was placed in immediate possession, and the whole of the pur-

chase money was paid by him. In January, 1867, Leftwich executed to Turnbull a deed of release for the land, with warranty of title. Turnbull shortly afterwards sold and conveyed to Howard, and Howard, subsequently in 1868, conveyed to Floyd. In 1866 a judgment was recovered by Board against Leftwich, the original vendor, which judgment was duly docketed in the county where the land was. The claim was to subject the land in the hands of Floyd to the lien of that judgment in favor of Board. Such being the uncontroverted facts, there is no difficulty in seeing that, by the application of the above principles, Floyd was entitled to hold to the exclusion of the judgment lien asserted, and so this court ruled, reversing the decree to the contrary pronounced by the circuit court of Bedford.

It must be observed that the facts found—in other words, the parol agreement relied on in *Floyd, Trustee,* v. *Harding and als.,* came square up to the requisite standard of being certain and definite in its terms. The same cannot be said of the parol agreement relied on in this case, even as averred in the answer of the defendant, Ira M. Hurt. The agreement relied on here, as stated in the answer, briefly stated, is this: That Cary Gray, the purchaser at the judicial sale, executed his bonds with his son, William R. Gray, as surety, for the purchase money; that Cary Gray became insolvent and never paid any portion of the purchase money, and that William R. Gray paid the entire purchase price, and that it was *agreed* between Cary Gray and William R. Gray that the latter *must take* the land to indemnify himself for the purchase money paid by him, and this was done, though it was not said when, long before the recovery of Prillaman's judgment. Observe, it is not stated in explicit terms that Cary Gray and William R. Gray made an agreement by which the latter purchased of the former his equitable interest acquired as purchaser at said judicial sale. On the contrary the agreement, as alleged, seems to indicate incompleteness, is indefinite and uncertain, partaking rather of the nature of a transaction from which a resulting trust might be

raised, than one of bargain and sale. The distinction is important.

But, however, this may be, though it might be that this parol agreement, as alleged, is, for all practical purposes, sufficiently certain and definite, yet behind all that is the question, was there a parol agreement in fact, and, if so, what was it? To determine this we must look only to the evidence contained in the record, bearing in mind that the contract or agreement, if any be proved, must be that, in this case, set up in the answer, and not a different one. The parol agreement relied on is affirmative matter set up in the answer, in no manner responsive to the bill, and must be proved as alleged.

In looking to the evidence we are met at the threshold with these pregnant circumstances, (1), the indefiniteness of the terms of agreement, and (2), the failure of the only three persons who knew all the facts, to wit: Cary Gray, William R. Gray and Harvey Gray, to answer the plaintiff's bill, and failure to take the depositions of the last two of them. William R. and Harvey Gray, if entitled to credit, could have fully explained this matter; it appears from the record that their depositions might have been taken, one of them being quite convenient and the other in the state of Texas; but neither of them was called to testify. The fair inference is, that if called on, their evidence would not have been favorable to the defence set up. True, the deposition of Cary Gray was taken, and he says he never paid any part, not even one cent of the purchase money for the land in question, and that all thereof that was paid was paid by his son and surety, William R. Gray.

Now, it was after the war that Cary Gray says he discovered that he could not pay for the land, and that then it was that he let his son, William R., have the land. Yet, strange to say, it appears in evidence and at variance with the agreement by parol, as stated in Hurt's answer, that the land was not, strictly speaking, purchased at said judicial sale by Cary Gray, but by Isaac M. Jones for himself and Valentine

Thrash and George Kefauver (the two latter being the administrators of William Snuffer, and also the commissioners making the sale), at the price of $2,700, and they, making this crooked purchase at their own sale, immediately resold to Cary Gray at an advance of $300; divided this illegal gain, and reported the sale as made to Cary Gray at said sum of $2,700; these two personal representatives and commissioners thus defrauding the estate of their decedent of the sum thus illegally appropriated to themselves and their confederate, the said I. M. Jones, who says, in his deposition in this suit, that his share ($100) of said profit was paid him by Valentine Thrash. The inference is irresistible that this advance of $300, was paid by Cary Gray at or about the time of his purchase, which was before the war; yet he says that after the war he became insolvent, could not pay, and let William R. have the land, without himself having paid one cent of the purchase money.

Again, after the sale of this Snuffer land, by Thrash and Kefauver, commissioners, and their report of the sale, they were appointed receivers, and directed to collect the purchase money thereof. Subsequently they reported to court that they had collected $715, and thereafter, to-wit: at the November term, 1860, of said county court of Franklin, a decree was entered specifically directing them how to disburse that sum. It is not pretended that Wm. R. Gray then claimed this land, and this sum of $715 must have been paid by Cary Gray; in fact nothing to the contrary is pretended. And in addition, as late as the 11th day of May, 1865, long after the rendition and docketing of the plaintiff's decree, it seems that after his purchase Cary Gray sold certain machinery connected with a mill on this Snuffer land, to Geo. W. Huff, it being what in the record is called a *mill and fan*, for $243; and Thrash being indebted to him, it was agreed that Huff should credit Thrash with that amount, and that Thrash should credit Cary Gray with the same amount on his purchase money for this Snuffer land; and Huff says: when this agreement was consummated, Cary Gray

said the agreement would have to be made in Harvey Gray's name. This was unquestionably a payment by Cary Gray himself, as late as 1868; and it is at this time we have the first intimation of a disposition on Cary Gray's part to screen this property from the payments of his debts, by intimating then that it was owned by his son Harvey. On different occasions, and to different persons, nearly, if not quite as late, he claimed that he had bought the land and had paid for it. With these stubborn facts full in view, it is impossible to believe that Cary Gray's statement is true.

There is yet another view which overwhelms the defence set up, to-wit: that Cary Gray being unable to pay after the war, sold by parol agreement to his son, Wm. R. Gray, and that the latter, by like agreement, sold to Harvey Gray, and put him in possession, and that, being so in possession, his father, Cary Gray, on getting the title from the commissioner, on the same day conveyed to Harvey Gray, and that the latter being unable to pay, conveyed the land to Wm. R. Gray, who sold and conveyed to Hurt.

It will be observed it is not even averred in the answer of Hurt, nor is it anywhere proved that Wm. R. Gray ever had possession, actual or constructive, until after the conveyance from Harvey Gray to him in 1871, four years after the docketing of Prillaman's lien, during all which time Cary Gray was the ostensible owner and in the actual possession; an ownership and possession questioned only by some evidence in the record taken to show that Harvey Gray managed and controlled the property as owner, prior to his conveyance to Wm. R. Gray. But, for all that period Cary Gray lived on the land, and his son, Harvey, a young unmarried man without means, lived with him.

Surely, it cannot be successfully contended that these indefinite, tortuous ways and pretences constitute acts of part performance which refer to, resulted from, or were done in pursuance of any legitimate agreement between Cary Gray and Wm. R.

Gray. Nor can it be said that these transactions are upheld by the doctrine laid down in the case of *Floyd* v. *Harding;* for there, a definite parol contract was undisputed, immediate possession had been given, and the whole of the purchase money paid, and the cause submitted to the court upon the settled questions of law arising from the facts. Here no definite agreement is alleged, none is proved, but on the contrary, the evidence respecting the agreement attempted to be set up is conflicting, and aside from its conflicting character, wholly insufficient. It is apparent that the defence relied on by the appellant was concocted by Cary Gray for the purpose of screening, by the aid of his two sons, Harvey and William R., his property from the payment of his just debts. The whole scheme, be it said, exhibits much more of audacity than of skill, or even of shrewd cunning. In these things Ira M. Hurt had no participation. His misfortune, a hard one, is chargeable only to his own want of care. For these reasons we are of opinion that there is no error in the decree complained of, and the same must be affirmed with costs to the appellee.

DECREE AFFIRMED.